IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL MARK MARTIN,   6:15-CV-226-PK

Plaintiff,

OPINION AND ORDER

v.

OREGON DEPARTMENT OF
CORRECTIONS, MICHAEL GOWER,
JEFF PREMO, D. E. LONG, DR. DAGNER,
PhD, J. LAWSON, SANDRA AGUINAGA,
NANCY GREEN, CHEMEKETA
COMMUNITY COLLEGE, OREGON STATE
BOARD OF HIGHER EDUCATION, and
JOHN & JANE DOES,

Defendants.

PAPAK, Magistrate Judge:

On February 9, 2015, plaintiff *pro se* Michael Mark Martin, an incarcerated prisoner, filed this action *in forma pauperis* against defendants Oregon Department of Corrections ("ODOC"), Michael Gower, Jeff Premo, D. Long, Dr. Dagner, J. Lawson, and John and Jane

Page 1 - OPINION AND ORDER

Does (collectively, the "original ODOC defendants"), each individual defendant purportedly in both his individual and official capacities.[1] Martin amended his complaint effective November 3, 2015. Also on November 3, 2015, I granted Martin leave to substitute Sandra Aguinaga (collectively with the original ODOC defendants, the "ODOC defendants") for fictitiously named defendant Jane Doe. On March 11, 2016, I granted Martin leave to amend his complaint a second time and to add as additional defendants Chemeketa Community College (the "College") and the College's former employee, Nancy Green (collectively, the "College defendants"). Although Martin's second amended complaint is not a model of clarity, my analysis suggests that, by and through his second amended complaint, Martin intended to allege (i) the ODOC defendants' liability under 42 U.S.C. § 1983 for the violation of his Eighth Amendment right to adequate medical treatment and housing conditions, (ii) all defendants' liability under Section 1983 for the violation of his right under the First Amendment to file grievances regarding the terms and conditions of his confinement, (iii) all defendants' liability under Section 1983 for the violation of his due process rights under the Fourteenth Amendment, (iv) all defendants' liability under Title II of the Americans with Disability Act (the "ADA"), (v) all defendants' liability under Section 504 of the Rehabilitation Act (the "RA"), and (vi) all defendants' liability for the violation of his right to full-time employment or on-the-job vocational training while incarcerated as guaranteed under Article I, Section 41 of the Oregon Constitution. The College

---

[1] Because it is well established that an official-capacity suit under 42 U.S.C. § 1983 "represent[s] only another way of pleading an action against an entity of which an officer is an agent," *Kentucky v. Graham,* 473 U.S. 159, 165 (1985), *quoting Monell v. Dep't of Soc. Servs. of N.Y.C.,* 436 U.S. 658, 690 n.55 (1978), I construe Martin's claims to the extent alleged against the defendants in their official capacities as though instead alleged against the State of Oregon. *See Hafter v. Melo,* 502 U.S. 21, 25 (1991).

moved to dismiss Martin's claims against the College defendants on May 18, 2016.

Martin amended his complaint a third time effective June 15, 2016, after the College's motion to dismiss was filed, adding as an additional defendant the Oregon State Board of Higher Education (the "Board"). My analysis of Martin's third amended complaint suggests that he did not otherwise intend his amendments of June 15, 2016, to effect significant modification of his claims as set forth in his second amended complaint.

Now before the court is the College's Federal Civil Procedure Rule 12(b)(6) motion (#70) to dismiss Martin's claims against the College defendants for failure to state a claim. I have considered the motion and all of the pleadings and papers on file. For the reasons set forth below, the College's motion is granted in part and denied in part, as discussed below.

## LEGAL STANDARDS

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433, 555 (2007). To raise a right to relief above the speculative level, "[t]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id., quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a). Instead, the plaintiff must plead affirmative factual content, as opposed to any merely conclusory recitation that the elements of a claim have been satisfied, that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), *citing Twombly,* 550 U.S. at 556. "In sum, for a

Page 3 - OPINION AND ORDER

complaint to survive a motion to dismiss, the non-conclusory 'factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009), *citing Iqbal,* 556 U.S. at 678.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007). In considering a motion to dismiss, this court accepts all of the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Kahle v. Gonzales,* 474 F.3d 665, 667 (9th Cir. 2007). Moreover, the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Nat'l Org. For Women v. Scheidler,* 510 U.S. 249, 256 (1994), *quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992). The court need not, however, accept legal conclusions "cast in the form of factual allegations." *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).

The court must construe the pleadings of a *pro se* litigant more leniently than those of a lawyer. *See Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987). When, as here, the plaintiff is *pro se* in a civil rights case, it is the court's duty "to construe the pleadings liberally and to afford the [plaintiff] the benefit of any doubt." *Bretz v. Kelman,* 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (*en banc*). A *pro se* plaintiff should be given leave to amend the complaint unless an amendment could not cure the complaint's deficiencies. *Lopez v. Smith,* 203 F.3d 1122, 1130-31 (9th Cir. 2000) (*en banc*).

## FACTUAL BACKGROUND

### I. The Parties

Plaintiff Martin is an incarcerated prisoner currently housed at the Columbia River Correctional Institution, but previously, and at all material times, housed either at the Oregon State Penitentiary ("OSP") or the Snake River Correctional Facility ("SRCF"). Martin's originally filed complaint contains exhibits constituting evidence sufficient to establish that Martin had available to him while incarcerated at OSP and SRCF a three-level grievance procedure consistent with the regulations set forth in Chapter 291, Division 109, of the Oregon Administrative Rules.

Defendant ODOC is, and at all material times was, an agency of the State of Oregon charged with managing the state prison system. Defendant Gower is, and at all material times was, employed by ODOC as Assistant Director of the Operations Division. Defendant Premo is, and at all material times was, employed by ODOC as Superintendent of the OSP. At all times material to Martin's complaint defendant Long was employed by ODOC as a Correctional Captain. Defendant Dagner was, at all material times, employed by ODOC as a Correctional Physician Specialist. Defendant Lawson was, at all material times, employed by ODOC as a Grievance Coordinator. Defendant Aguinaga is, and at all material times was, an employee of OSP in its education department. Defendant the College is a community college located in Oregon and receiving some funding from the State of Oregon. Defendant Green is a former employee of the College. Defendant the Board is the statutory governing board for the Oregon University System. Martin does not allege the identities of the fictitiously named Doe defendants, and does not specify the roles they played in the complained-of conduct.

Page 5 - OPINION AND ORDER

## II. Martin's Allegations Regarding the Parties' Dispute

Martin has been in ODOC custody since December 18, 2013. *See* original ODOC Defendants' Answer (#17), ¶ 7. On an unspecified date Martin was assigned to and resided in cell E-272 with a cellmate. Cell E-272 is on the second floor of OSP. Martin was assigned to the upper bunk. On March 14, 2014, Martin fell while climbing down from his bunk and struck his right knee on the cell floor. Martin asked for help from the duty officer and was told to speak to the pill-line staff at normal medication rounds. All meals and the medication rounds occur on the first floor of OSP. The medication nurse told Martin to speak to Sergeant Branch, who advised Martin to place a medical request form into the mailbox. Martin returned to his second floor cell and completed the paperwork. He attempted to give the paperwork to the duty officer, and was told to deliver it to the mailboxes on the first floor in the morning.

Martin delivered his medical request paperwork to the mailbox on March 15, 2014, informed the officer on duty at the pill line about his fall, and showed the medication nurse that his pant leg could not be pulled over his swollen knee. That evening, Martin asked for help from the medication nurse because he could not put weight on his leg. The following morning, Martin was attempting to get to breakfast and was asked by Sergeant Warren if he was all right. Sergeant Warren told Martin his knee looked pretty bad.

On March 17, 2014, Martin remained in his cell as he was unable to climb down from his bunk and elevated the leg to relieve swelling. The following day Martin was summoned to medical to see defendant Dagner. The doctor used a reflex hammer on Martin's knee two or three times before Martin asked him to stop due to pain. Dr. Dagner said the knee was not broken, but ordered precautionary x-rays, and placed Martin on crutches. Dr. Dagner gave

Page 6 - OPINION AND ORDER

Martin some light exercises to perform and ordered a lower bunk/lower tier restriction, as well as a knee support. On March 19 Martin placed an inmate request about the knee support asking when he would receive the support.

On March 21, 2014, Martin's knee was x-rayed. On March 25 Martin was called to see Dr. Dagner, who asked why Martin was not immobilizing his knee. Dr. Dagner told Martin there was a lateral fracture of the patella and placed a velcro cast to immobilize the knee. Martin advised Dr. Dagner that he had not been moved to a lower bunk, and Dr. Dagner again ordered a restriction to a lower bunk and lower tier and added a restriction of no stairs. Martin was told to stop any exercise and to elevate his leg. On return to his cell, Martin informed the unit officer of the doctor's orders. The following day Martin was told the doctor had not entered an order for a lower tier lower bunk and no stairs. Martin continued to climb stairs for each meal and use the upper bunk for approximately two weeks, despite his belief that there were ground floor cells available.

On April 14, 2014, Martin filed grievance number OSP-2014-06-005, apparently complaining about the cell size and upper bunks without ladders to access them. On April 20 Martin told Sargent Marthaller about the situation. Sargent Marthaller immediately moved Martin to cell E-185, which met Dr. Dagner's restrictions.

In late April or early May Martin was notified that he was to report to the fourth floor education department for work duties. Accordingly, Martin climbed four flights of stairs at least twice daily while on crutches and in a leg brace, against doctor's orders, until August 2014.

On July 17, 2014, Martin started to keep a journal and his first appeal of grievance number OSP-2014–06-005 was accepted by defendant Lawson. The following day Martin was

Page 7 - OPINION AND ORDER

moved from cell E-185 to cell E-101. Cell E-101 is undesirable because it lacks privacy and is extremely noisy. Martin asked Officer Richards why he was being moved and was told Captain Long said Martin had asked for the move. Martin contends Captain Long moved him to the undesirable cell out of retribution for Martin's grievance appeal. On July 20, 2014, Martin filed a new grievance about the cell change and Long's retribution.

On July 24 Martin filed a move request form and was told he would remain in that cell until Captain Long returned from vacation. The following day Sargent Marthaller told Martin he had been moved for his own safety. On July 26 Martin was harassed by fellow inmates because cell E-101 is notorious for housing sex offenders and informants requiring protection.

Martin met with Sargent Marthaller and Ms. Padilla on July 29, 2014. Martin described his knee injury, the move to the undesirable cell, and his grievance. Ms. Padilla took notes and said she would speak to her superiors. The following day Martin was moved into a much better cell, E-138, with more privacy. Martin met with his psychiatric counselor, Mr. Govro, on August 1, 2014, and described anxiety over the possibility that Captain Long would transfer him from OSP and prevent Martin from taking an automotive vocational training class provided through defendant the College. On that date, Martin's grievance about the Captain's retaliation was assigned number OSP-2014-07-069.

On August 4, 2014, Captain Long came to the education department on the fourth floor and asked Martin to come to his office after work. Captain Long said he moved Martin from E-185 to E-101 for his physical safety. Martin said that did not make any sense because E-185 was on the ground floor with a single bunk. Captain Long then told Martin he was concerned Martin would fake an injury to enhance a lawsuit. Martin was no longer on crutches or using a knee

Page 8 - OPINION AND ORDER

brace. Martin thought Captain Long threatened to take his job away. Captain Long advised Martin to see the doctor and have the stair restriction removed. Other inmates told Martin he would soon be transferred.

On August 7 Martin spoke with his counselor, Ms. Dennis, about his fear of transfer, the Captain's threats about his job, and his fear of being transferred to an undesirable double cell. On August 11, Martin appealed grievance OSP-2014-07-069 regarding Captain Long's retaliation, asserting that transferring him to prevent complaints or a lawsuit violated his civil rights. Two days later Captain Long informed Martin he was no longer allowed to work on the fourth floor due to the stair restriction. On August 20, 2014, Martin was transferred to the Snake River Correctional Facility ("SNCF") on Captain's Long's order. It is Martin's position that the transfer was retaliatory, and caused him to lose the opportunity to participate in the Residential Drug Program and Transitional Leave. Martin contends that in order to complete the Automotive Vocational Program with a November 2015 start date, he will have to remain in custody for an additional year.

On August 23 Martin appealed grievance number OSP-2014-06-005. The following day Martin filed two additional grievances, one for OSP's failure to respond to grievance number OSP-2014-06-005A and one alleging his transfer to SRCF was an act of retaliation by Captain Long.

On September 7, 2014, the doctor removed the stair restriction from Martin's orders. The following month Martin's counselor, Mr. Lewandowski, advised Martin that there was a new medical restriction preventing Martin's return to OSP. In November 2014 the doctor told Martin the continuing numbness in his foot was normal and would dissipate over time. Because Martin

Page 9 - OPINION AND ORDER

was at SNCF and not OSP, he was not able to start the Automotive Vocational Technology program offered through the College and operated by the College's employee defendant Green. The program apparently lasts a year and commenced each November.

Martin filed his Complaint in this court on February 2, 2015, contending he received substandard medical care, was not allowed to follow his doctor's orders, and that the cells at OSP were too small and dangerous because they lacked ladders to the upper bunks.

On April 17, 2015, Martin met with his counselor and had a telephone interview for the Automotive Vocational Technology program at OSP and was accepted into the program. The following week Martin was transferred back to OSP. In May 2015 ladders were installed in OSP cells, and complaining inmates were told to address the issue with the inmate who filed a lawsuit, which Martin found threatening.

## ANALYSIS

As noted above, Martin alleges the liability of the College defendants under Section 1983 for the violation of his rights under the First Amendment and for the violation of his due process rights under the Fourteenth Amendment, under Title II of the ADA and Section 504 of the RA, and for the violation of his right to full-time employment or on-the-job vocational training while incarcerated as guaranteed under Article I, Section 41 of the Oregon Constitution. I address the parties' arguments in connection with those claims in turn, below.

**I.     Notice of Tort Claims Under the Oregon Tort Claims Act**

The College moves to dismiss all of Martin's claims against the College Defendants for failure to provide notice of tort claims under the Oregon Tort Claims Act (the "OTCA"). Oregon Revised Statute 30.275(a), codifying the notice provision of the OTCA provides as follows:

> No action arising from any act or omission of a public body or an officer, employee or agent of a public body arising within the scope of ORS 30.260 to 30.300 [governing Oregon statutory tort claims against public bodies] shall be maintained unless notice of claim is given as required in this section.

O.R.S. § 30.275(a).

Although compliance with the notice requirement of the OTCA is "a mandatory requirement and a condition precedent to recovery under the Oregon Tort Claims Act," *Urban Renewal Agency v. Lackey,* 275 Or. 35, 40 (1976), it is wholly inapplicable to federal claims, because the Oregon legislature lacks authority to impose limitations on the rights of plaintiffs to the protections of federal law. *See Rogers v. Saylor*, 306 Or. 267, 277-278 (1988). The College's OTCA tort notice argument is therefore without merit to the extent it addresses Martin's Section 1983, ADA, and RA claims. Moreover, for reasons set forth below, it is clear that Martin cannot state a claim against the College defendants under Article I, Section 41 of the Oregon Constitution. The court therefore need not address the question whether Martin's Oregon constitutional claim could be construed as arising within the scope of Or. Rev. Stat. §§ 30.260 to 30.200. The College's motion (#70) is therefore denied to the extent premised on Martin's purported failure to comply with OTCA tort notice provisions.

## II.     Martin's Section 1983 Claims

In two separate claims, Martin alleges the College defendants' liability under Section 1983 for the violation of his Fourteenth Amendment due process rights and for the violation of his rights under the First Amendment. Section 1983:

> affords a "civil remedy"' for deprivations of federally protected rights caused by persons acting under color of state law without any express requirement of a particular state of mind. Accordingly, in any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:

Page 11 - OPINION AND ORDER

> (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535 (1981). It is undisputed for purposes of the College's motion that the College defendants are state actors.

### A.     Martin's Fourteenth Amendment Claim

Martin alleges the liability of the College defendants under Section 1983 for the violation of his due process rights under the Fourteenth Amendment arising out of their conduct in denying him entry to the Automotive Vocational Technology program. The Fourteenth Amendment prohibits the deprivation of liberty or property without due process of law. To prevail on a procedural due process claim under Section 1983, a plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) deprivation of the interest by the government; and (3) lack of process." *Wright v. Riveland,* 219 F.3d 905, 913 (9th Cir. 2000) (internal modifications omitted), *quoting Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993).

A due process claim is cognizable only if there is a recognized liberty or property interest at stake. It is well established that a convicted prisoner has no protected liberty or property interest in a vocational instruction course because there is no constitutional right to rehabilitation. *Rizzo v. Dawson,* 778 F.2d 527, 531 (9th Cir. 1985) (*citing Hoptowit v. Ray,* 682 F.2d 1237, 1254-55 (9th Cir. 1982); *see also Coakley v. Murphy,* 884 F.2d 1218, 1221 (9th Cir. 1989); *Smith v. Lambert,* 12 Fed. Appx. 570, 571 (9th Cir. 2001). Accordingly, Martin's Fourteenth Amendment claim against the College defendants is without merit, and the College's motion (#70) is granted with prejudice to the extent it addresses the Fourteenth Amendment claim.

### B. Martin's First Amendment Claim

Martin alleges the liability of the College defendants under Section 1983 for the violation of his rights under the First Amendment arising out of their conduct in denying him access to the Automotive Vocational Technology program in retaliation for exercising his First Amendment right to file this lawsuit, and, more specifically, for adding defendant Aguinaga as a defendant herein. A properly pled complaint which alleges retaliation for the exercise of a constitutional right states a cause of action under 42 U.S.C. § 1983. *Mt. Healthy City Bd. Of Ed. V. Doyle,* 429 U.S. 274 (1977). The claim must include an allegation that the plaintiff engaged in conduct that is constitutionally protected and that the conduct was a substantial or motivating factor for the defendant's action. *Id.* at 287.

"A prisoner suing state prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994); *Rizzo v. Dawson,* 788 F.2d 527, 531 (9th Cir. 1985). "To demonstrate retaliation in violation of the First Amendment, [plaintiff] must ultimately prove that [defendants] took action that 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Skoog v. Cnty. Of Clackamas,* 469F.3d 1221, 1231-32 (9th Cir. 2006) (*quoting Mendocino Envtl. Ctr. v. Mendocino Cty.,* 192 F.3d 1283, 1300 (9th Cir. 1999)). Additionally, plaintiff must demonstrate that defendants' "desire to chill his speech was a but-for cause of their allegedly unlawful conduct." *Ford v. City of Yakima,* 706 F.3d 1188, 1193 (9th Cir. 2013).

Martin alleges he "began to have problems at his job in education after he wrote a motion

Page 13 - OPINION AND ORDER

to the federal court asking to add Ms. Sandra Aguinaga to his Federal 1983 suit." Third Am. Compl. at ¶ 118. Martin alleges that after he filed the motion to amend, Ms. Aguinaga began writing him up with 'Daily Fail' reports that were "ficticious and retributory in nature." Third Am. Compl. at ¶ 119. Martin contends that after filing the motion, on September 14, 2015, Green "called the plaintiff into her office and asked him about his suing 'Sandra.'" Third Am. Compl. at ¶ 120. Martin responded that he "was uncomfortable talking about any legal issues due to the fact that Ms. Green was obviously very agitated. Plaintiff was then told that if he was suing one of her staff members, then he would be removed from his job in education, as well as his VT Automotive Program." *Id.* Martin contends he was removed from his education job and denied access to the VT Automotive program the following day. Third Am. Compl. at ¶ 122. These allegations are sufficient to state a Section 1983 claim for violation of the First Amendment. In consequence, the College's motion (#70) is denied to the extent it addresses Martin's First Amendment claim.

### III. Martin's ADA and Rehabilitation Act of 1973 Claims

As noted above, Martin alleges the College defendants violated his rights under the ADA and RA by removing him from the Automotive Vocational Technology program. In support of his ADA and RA claims, Martin contends:

> On 8-19-2015, Ms. Nancy Green, the college coordinator in charge of the VT Automotive program, learned that plaintiff had added one of her staff to his civil suit in the federal courts. She immediately told him that he would be removed from his job and programming, she told him that he probably couldn't perform his school [*sic*] anyway because he [*sic*] of his knee. This is a direct violation of both Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. 12132; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794.

Third Am. Compl. at ¶ 37.

Page 14 - OPINION AND ORDER

Martin's claims are properly construed as "reasonable accommodation" discrimination claims. "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & Cnty. of S.F.,* 743 F.3d 1211, 1231 (9th Cir. 2014) (ADA), *cert. granted,* 135 S.Ct. 1765 (2015) *on remand Sheehan v. City & Cnty. of S.F.,* 793 F.3d 1009 (9th Cir. 2015); *Mark H. v. Hamamoto,* 620 F.3d 1090, 1097 (9th Cir. 2010) (Rehabilitation Act).

Title II of the ADA and the Rehabilitation Act both prohibit the exclusion of a qualified individual with a disability from the participation in, or the denial of benefits of, services, programs, or activities of a public entity. 42 U.S.C. § 12132 (ADA); 29 U.S.C. § 794 (Rehabilitation Act). To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Duvall v. Cnty. of Kitsap,* 260 F.3d 1124, 1135 (9th Cir. 2001). Similar standards apply to the Rehabilitation Act claim. *Id., see also Mark H.,* 620 F.3d at 1097-98 (explaining that to establish defendant violated section 504 of the Rehabilitation Act by denying plaintiff reasonable accommodation, plaintiff had to show: (1) she needed disability-specific services to enjoy meaningful access to the benefits of a public education, (2) the defendant was on notice that plaintiff needed those specific services, but did not provide those services, and (3) the specific services were available as a reasonable accommodation).

The College points to Martin's exhibit X-8 submitted with his second amended complaint. The exhibit is a December 2, 2015 memorandum from OSP Superintendent Premo to

Page 15 - OPINION AND ORDER

Martin in which Premo advises Martin he was never admitted to the automotive vocational program but had been on a waiting list for the program. Premo asserts Martin was not guaranteed a place in the program, and that the Oregon Department of Corrections "has full discretion on whom to assign to programs." Pltf. Ex. X-8. The memorandum contains several allegations of misconduct by Martin.

Martin's ADA and Rehabilitation Act claims fail because he cannot show he was otherwise entitled to be included in the Automotive Vocational Technology program. As discussed above, prisoners do not have a guaranteed right to educational programs. In addition, Martin submitted evidence tending to establish that ODOC has discretion about who to admit to programs, suggesting that the College defendants were without authority either to admit or deny him admission. Moreover, to the extent it is Martin's position that he was removed from or denied admission to the vocational program in retaliation for adding Aguinaga as a defendant in this lawsuit, that conduct, if established would not give rise to an ADA or RA claim. Accordingly, the College's motion (#70) is granted with prejudice to the extent it addresses Martin's ADA and RA claims.

## IV.    Martin's Oregon Constitutional Claim

Martin alleges that the College defendants violated Article I, Section 41 of the Oregon Constitution by denying him participation in the Automotive Vocational Technology program. Martin's third amended complaint does not refer to the Oregon Constitution. It is Martin's position, specifically, that:

> Article I, Section 41 of the Oregon Bill of Rights was violated when the [defendants] failed to allow the plaintiff to participate in the programs he had qualified for even though there was no disciplinary reason, nor was there any

Page 16 - OPINION AND ORDER

> benefit to the safety or security of the institution. These were attempts to stop his complaints and to chill his desire to access the courts. These actions resulted in severe depression, feelings of hopelessness and even suicidal thoughts. This resulted in mental and emotional damages that are ongoing.

Mem. (#68) in Support, ¶ 7(e).

Article I Section 41 of the Oregon Constitution provides in relevant part:

> Section 41. Work and training for corrections institution inmates; work programs; limitations; duties of corrections director. . . (2) All inmates of state corrections institutions shall be actively engaged full-time in work or on-the-job training. The work or on-the-job training programs shall be established and overseen by the corrections director . . . . (3) . . . . **However, no inmate has a legally enforceable right to a job or to otherwise participate in work, on-the-job training or educational programs** . . . .

Or. Const., Art. I, § 41 (emphasis supplied).

The plain language of Section 41(3) precludes Martin's claim that the College defendants violated the Oregon constitution by failing to allow Martin access to the educational program, in that it clearly establishes that he had no "legally enforceable right" under the Oregon constitution to participate in the program. Accordingly, Martin's Oregon constitutional claim is without merit, and the College's motion (#70) is granted with prejudice to the extent it addresses Martin's Oregon constitutional claim.

## CONCLUSION

For the reasons set forth above, the College's motion (#70) to dismiss is granted to the extent it addresses Martin's Fourteenth Amendment, ADA, RA, and Oregon constitutional claims

///

///

///

Page 17 - OPINION AND ORDER

and is otherwise denied, and those claims are accordingly dismissed with prejudice to the extent alleged against the College defendants, or either of them.

Dated this 9th day of January, 2017.

Honorable Paul Papak
United States Magistrate Judge